**SO ORDERED.**

**SIGNED this 27 day of October, 2011.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

HENDRIX-BARNHILL COMPANY, INC.,              CHAPTER 11
                                             CASE NO. 11-01974-8-RDD
    DEBTOR

ORDER DENYING CONFIRMATION OF
CHAPTER 11 PLAN OF REORGANIZATION

Pending before the Court is the Chapter 11 Plan of Reorganization filed by Hendrix-Barnhill Company, Inc. (the "Debtor") on June 13, 2011 (the "Plan") and the Disclosure Statement filed by the Debtor on June 13, 2011 (the "Disclosure Statement")[1], the Bankruptcy Administrator's Objection to Confirmation of Amended Plan and Approval of Amended Disclosure Statement filed by the Bankruptcy Administrator on September 16, 2011, the Objection by Branch Banking and Trust Company of Disclosure Statement and Confirmation of Amended Plan of Reorganization filed by Branch Banking and Trust Company ("BB&T") on September 7, 2011, the Objection of CNA

---

[1] The Debtor filed the Amendment to Plan of Reorganization on July 29, 2011 and the Amendment to Disclosure Statement on July 29, 2011.

Surety to Approval of the Debtor's Amended Disclosure Statement and Confirmation of Amended Plan of Reorganization filed by CNA Surety on September 21, 2011, and the Objection by Ferguson Enterprises, Inc. d/b/a Ferguson Enterprises, Inc. of Virginia to Amended Disclosure Statement and Amended Plan of Reorganization filed by Ferguson Enterprises, Inc, d/b/a Ferguson Enterprises of Virginia ("Ferguson Enterprises") on September 21, 2011. The Court conducted a hearing on the Plan and Disclosure Statement on September 27, 2011 in Greenville, North Carolina.

## BACKGROUND

On March 15, 2011, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtor is a North Carolina corporation with its principal place of business located in Greenville, North Carolina. The Debtor is engaged in the business of installing utilities throughout Eastern North Carolina. The Debtor intends to fund its Plan through continued business operations.

The Debtor is indebted to BB&T pursuant to two promissory notes. Both promissory notes were executed on January 2, 2009 and are secured by accounts receivable, inventory, equipment, and certain vehicles. The first promissory note in the principal amount of $1,410,000.00 was modified in March 2010 to be payable in thirty-nine (39) installments of principal and interest in the amount of $27,425.00 beginning October 2010 and one final balloon payment. The contract interest rate is stated in the modification agreement as "the Adjusted LIBOR Rate." BB&T filed claim number twelve (12) in the amount of $1,068,208.12 referencing the first promissory note. The second promissory note is in the principal amount of $1,000,000.00. The contract interest rate is stated as "the Adjusted LIBOR Rate." The principal on the second promissory note was due on January 5, 2010, and interest was payable monthly. BB&T filed claim number fifteen (15) in the

amount of $889,600.64, referencing the second promissory note. The total prepetition amount of the two loans is approximately $1,957,808.70.

Pursuant to the Plan, the Debtor proposes to treat the two loans as one claim, secured in the amount of $533,090.00. The Debtor proposes to amortize the secured amount over ten (10) years with interest accruing at 5.5% per annum, and a balloon payment in five (5) years. The balance of the claim will be treated as a general unsecured claim. [2]

BB&T voted to reject the Plan. BB&T objects to its treatment under the Plan and argues that its treatment is not fair and equitable within the meaning of 11 U.S.C. § 1129(b). BB&T asserts that an interest rate of 5.5% is not a market rate of interest for a loan that is secured by equipment, inventory, and accounts receivable. Additionally, BB&T contends its treatment is not fair and equitable, because the proposed amortization period of ten (10) years is not a loan term that the Debtor could secure in the open market. BB&T argues that lenders, including BB&T, typically do not extend equipment/inventory loans beyond five (5) years.

BB&T further objects to its treatment and argues that the Plan does not satisfy the absolute priority rule pursuant to 11 U.S.C. § 1129(b)(2)(B) and the Debtor's Disclosure Statement does not contain adequate information as required by 11 U.S.C. § 1125(b) of the Bankruptcy Code.

---

[2]The Plan treats the equity security holders in class 12 and provides:

Kelly Barnhill Jr. proposes to contribute $10,000.00 to the Debtor in exchange for 100% ownership of the Debtor. The equity interest of all pre-petition equity holders in the Debtor shall be eliminated as of the Effective Date and Kelly Barnhill, Jr. shall be the sole stockholder of the Debtor. The $10,000.00 contribution will be distributed to the general unsecured class pursuant to the provisions of this Plan. Any party desiring to place a competing bid shall do so at the hearing on confirmation of the Plan. If any other party makes a bid at the hearing, the Debtor will conduct an auction in the courtroom.

Because the Court finds that the treatment of BB&T is not fair and equitable, the Court need not address the remaining objections advanced by BB&T, CNA Surety, and Ferguson Enterprises at this juncture.

## DISCUSSION

A plan must be "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). Section 1129(b)(2) sets forth the standards a plan must meet to be considered "fair and equitable." *In re EFH Grove Tower Assocs.*, 105 B.R. 310, 313 (Bankr. E.D.N.C. 1989). However, these requirements are not exclusive. *Id.* Even if a plan meets the standards of 11 U.S.C. § 1129(b)(2), it can still be considered not "fair and equitable" and, therefore, nonconfirmable. *Id.* (citing *Matter of D&F Construction Co.*, 865 F.2d 673, 675 (5th Cir. 1989); *In re Cheatham*, 78 B.R. 104 (Bankr. E.D.N.C. 1987), *aff'd* 91 B.R. 377 (E.D.N.C. 1988)). For a plan to be "fair and equitable," the "plan must literally be fair and equitable." *Id.*

The Debtor's proposed treatment of BB&T's claims is not fair and equitable. The Plan proposes a lengthy period of amortization and places all of the risks associated with the debt on BB&T. The proposed interest rate of 5.5% is below the market rate of interest for a loan secured by equipment, inventory, and accounts receivable. Additionally, a ten (10) year amortization period is not a reasonable market term for a loan of this nature.

Kelly Barnhill, Jr., President of the Debtor, testified that the Debtor uses the equipment secured by BB&T's loan on a daily basis in the operation of its business. The equipment and vehicles are used and are presently over three (3) years old. Mr. Barnhill stated that because the vehicles are used so often, mileage on the vehicles is high. Once the Debtor can no longer use the

vehicles, they are resold at auctions. Mr. Barnhill testified that currently, the Debtor is involved in approximately seven (7) projects. Mr. Barnhill testified that based upon his own experience, he did not believe he would be able to obtain such favorable financing terms in the open market as are provided for in the Plan.

Mr. Barnhill acknowledged that in today's market he would be unable to obtain a ten (10) year amortization period and a 5.5% interest rate on a loan secured by equipment, inventory and accounts receivable. This treatment in no way resembles the current market treatment for loans of this nature.

Based on the Debtor's use of the collateral resulting in constant depreciation of the value of the collateral and the lack of payments currently being received, along with the ten (10) year amortization period, the Court finds that the Plan is not fair and equitable with respect to the treatment of BB&T's claim.

BB&T's two claims total approximately $1,957,808.70. According to Schedule B, the Debtor valued the collateral securing these two claims at approximately $481,406.00.

A plan which imposes substantial risks upon a creditor may not be fair and equitable under 11 U.S.C. § 1129(b)(1). *See In re EFH Grove Tower Assocs*, 105 B.R. 310 at 313-14 (noting that the "costs of the debtor's reorganization should be borne by those who stand to gain from the reorganization.").

Here, the total outstanding balance of principal and interest as of the date of the petition owed to BB&T is well above the value of the equipment, accounts receivable, inventory and vehicles. There is no equity cushion in the collateral. The collateral is of a type that has depreciated rapidly and will continue to depreciate rapidly. BB&T would be assuming all of the risk.

The Court also has concerns regarding the lack of detailed disclosures made by the Debtor to its creditors in the disclosure statement. 11 U.S.C. § 1125(b) provides for a disclosure statement with "adequate information." 11 U.S.C. § 1125(a)(1) provides:

> (1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

The Court finds that the disclosures are insufficient in detail to provide the creditors with an accurate basis for determining their position and their ability to make an informed decision with regard to the acceptance or rejection of the Plan. The Disclosure Statement does not contain details of the financial history of the Debtor or future projections. The Disclosure Statement, also fails to provide a hypothetical investor with sufficient information to assess the reasonableness of the proposed "sale" of the reorganized Debtor's stock to Kelly Barnhill, Jr. for $10,000.00 as set forth in class 12 of the Plan. Class 12 of the Plan provides that the "$10,000.00 contribution will be distributed to the general unsecured class pursuant to the provisions of this Plan." The Plan further provides: "[a]ny party desiring to place a competing bid shall do so at the hearing on confirmation of the Plan. If any other party makes a bid at the hearing, the Debtor will conduct an auction in the courtroom." At the hearing, BB&T objected to the Debtor conducting an auction at the confirmation hearing, because the potential bidders were not given adequate information in the disclosure statement to be fully informed as to a reasonable purchase price for the stock of the Debtor. Further, BB&T argued that

the stock of the reorganized Debtor should be auctioned by means of an advertised public sale of the property in a manner that will generate the maximum proceeds for distribution to the unsecured class. There is no information in the Disclosure Statement to determine whether $10,000.00 is a fair and reasonable purchase price for the stock of the reorganized Debtor. Numerous questions remain unanswered regarding the valuation of various assets and the feasibility of the Debtor going forward. Where the Debtor is proposing to auction the Debtor's stock, the creditors would be greatly benefitted by a detailed statement regarding the Debtor's assets and valuation.

Accordingly, the Court holds that the Plan does not satisfy the requirements of § 1129. Therefore, confirmation of the Plan is **DENIED**.[3] The Debtor may file an amended plan and amended disclosure statement. The amended plan shall provide more specific information regarding the procedure and notice of the proposed auction process as described in class 12 of the Plan. The amended disclosure statement shall provide detailed financial projections of income and expenses and historical income and expense data in order to give creditors an opportunity to have more adequate information.

**SO ORDERED.**

**END OF DOCUMENT**

---

[3] At the hearing on September 27, 2011, the Court ordered a mediated settlement conference for the related Chapter 11 cases filed by Hendrix-Barnhill Company, Inc. docketed as case number 11-01974-8-RDD, Old Mill Properties, LLC docketed as case number 11-05080-8-RDD, Robert Kelly Barnhill, Jr. and JoAnn Emerson Barnhill, docketed as case number 11-05840-8-RDD, and Robert Kelly Barnhill, Sr. and Mary Ann Barnhill, docketed as case number 11-05844-8-RDD. The Court entered an order on September 28, 2011 referring these matters to a mediated settlement conference and appointed Jacqueline Clare as the mediator. The mediation is to be completed by November 30, 2011.